The Chancellor.
Rachael Newbold having, by her last will and testament, ordered certain legacies to be paid out of her personal estate, disposed of all the residue of her estate, both real and personal, as follows: “Ido hereby
direct, authorize and empower my executors, hereinafter named, to make sale of all the residue of my estate, whatsoever and wheresoever, real, personal and mixed, at such time as in their discretion they may think expedient for the advantage of my legatees, and to make, execute and deliver, to the purchaser and purchasers of my real estate, sufficient deeds of conveyance for the same in fee simple absolute, and the whole residue of my estate, consisting of the residue of my personal estate after the payment of my debts, funeral charges, and the legacies hereinbefore given and bequeathed, of the proceeds of the sales of my real estate, and of the sum of three thousand dollars, by me heretofore advanced to my daughter, Lydia Whitall, wife of Samuel Whitall, I order and direct to be divided into four equal parts — one equal fourth part whereof I give and bequeath to my daughter, Ann Stratton ; one other fourth part thereof I give to my daughter, Lydia Whitall, but the sum of three thousand dollars already advanced to my said daughter, Lydia Whitall, to be a part of her share, and she to receive under this bequest only so much as the one equal fourth part of the residue of my whole estate as above mentioned may exceed the said sum of three thousand dollars; one other equal fourth part thereof I give and bequeath to my daughter, Sarah Black; and the remaining fourth part thereof I give and bequeath to my son, Caleb Newbold, his executors and administrators, in trust,” &c., &c.
The surviving executors, Caleb Newbold and John Black, who are two of the defendants in original bill, settled their accounts in the Orphans’ Court of the county of Burlington, in the August Term, 1836, of that court. By the account stated by the surrogate, and allowed by the court, the balance of the estate in the hands of the executors was thirteen thousand three hundred and eight dollars and seventy-four cents.
*574 The object of this bill is, that the complainants may recover of the surviving executors of Rachael Newbold, that portion of the residue of the estate which the testatrix bequeathed to her daughter, Lydia Whitall, one of the complainants.
The complainants, in their bill, charge that the defendants committed a fraud in the settlement of their accounts'in the Orphans’ Court. The fraud alleged is that the executors did not carry into their accounts the sum of three thousand dollars, advanced to the complainant, Lydia, by the testatrix, and which, by her will, the testatrix ordered should make and constitute a part of her estate.
The complainants insist that, by the will of the testatrix, the sum of three thousand dollars is to be added to the sum of thirteen thousand three hundred and eight dollars and seventy-four cents, which would make in the hands of the executors, instead of the latter sum as appears by the stated accounts, the sum of sixteen thousand three hundred and eight dollars and seventy-four cents; and that the complainant, Lydia, being, by the will, entitled to the, one-fourth, her proportion, after deducting from the one-fourth, as directed by the will, the sum of three thousand dollars, would be the sum of one thousand and seventy-seven dollars and thirteen cents, and not three hundred and twenty-seven dollars and eighteen cents, which would be all she would receive if the stated accounts are correct. There is no dispute between the parties as to the construction of the will. The defendants admit that the estate should be settled upon the principle contended for by the complainants, but resist the payment to the complainants of anything under the will upon other grounds, which will be noticed hereafter.
The bill is answered by John Black and Caleb Newbold, who were then the surviving executors, and against whom the bill was originally filed. Caleb Newbold has since deceased. They deny the fraud with which they are charged in the bill, and give a very satisfactory statement how it happened that the accounts were stated in the manner they were. They had in their possession, as *575 executors, the obligations or evidences of debt, of a large amount due from the complainant, Samuel Whitall, the husband of the legatee, to the testatrix. They were advised by the surrogate that they had a right to deduct the indebtedness of the husband from the legacy to the wife, and to charge interest likewise, on the advancement of three thousand dollars. If this advice was correct, there was no necessity of carrying into the accounts the said sum of three thousand dollars, nor the amount which Samuel Whitall owed the estate. He was insolvent. The amount of his indebtedness to the estate, together with the interest on the advancement, would exceed his wife’s interest in the residue. In this view no one was prejudiced by the mode in which the accounts were stated. I do not think there is any ground for charging the executors with fraud; nor do I believe they intended to commit any, in stating their accounts as they did. I do not see any necessity, in this case, of imputing fraud to the executors. If the complainants are entitled to anything from these executors, under the will of the testatrix, their rights are in no way affected by the mode in which the executors have stated their accounts in the Orphans’ Court, nor by the allowance of those accounts by the court.
The defendants, in their answer, resist the claim of the complainants upon several grounds.
First. They insist that the action of the Orphans’ Court was final; and, there being no fraud or mistake, this court cannot open the accounts.
It is not necessary to open the accounts, or to interfere with any action of the Orphans’ Court, in order to ascertain the complainants’ rights, or to give them the relief they seek, if they are entitled to it. The accounts, as stated and allowed, do not in any way involve the adjudication of the complainants’ rights by the Orphans’ Court. The result of those accounts, and the adjudication of that court, ascertain the residue of the estate in the hands of the executors. That residue was to be disposed of according to the directions of the will. The complainants now claim the portion *576 of that residue, which, by the will, was given to the complainant, Lydia Whitall; and what that portion should be, was a question which was not in any shape before that court. The directions of the testatrix are plain. To that residue is to be added the sum of three thousand dollars, in the hands of Lydia, and then the amount is to be divided into four portions. The result is the same as if the three thousand dollars had been carried into the accounts stated before the court. It might have been more correct so to have stated the accounts, but because they were not so stated, does not involve the necessity of opening them, or of interfering with them as they were passed by the Orphans’ Court. The defendants do not pretend that the Orphans’ Court made any adjudication upon the matters involved in the controversy between the parties, or that the court passed the accounts in the shape they appear, for the purpose of including the complainants in the claim which they make in this suit.
It is not necessary, therefore, to decide the question discussed by counsel, whether this court will, in the exercise of its jurisdiction over the accounts of executors and administrators, interfere with a final settlement made by them in the Orphans’ Court, upon any other ground than that of fraud. The propriety of the court’s interfering in cases of fraud, was conceded.
The defendants, as a further defence, insist that, at the death of the testatrix, Samuel Whitall, one of the complainants, was largely indebted to her estate; that the amount of that indebtedness very much exceeded the proportion of the residue to which his wife was entitled under the will; that they, the executors, set off the one against the other, and, upon that principle, settled with the other residuary legatees; that the complainants have agreed to such settlement of the estate, and have acquiesced in it as a family arrangement. The only evidence of agreement or acquiescence on the part of the complainants, is the fact that they took no legal steps to enforce the claim which they now make, until the filing of the bill in this cause, which *577 was a period of ten years from the settlement in the Orphans Court. During this whole term the complainants were residing in the District of Columbia; and I do not think this delay is sufficient evidence of itself, of any such acquiescence or family arrangement as is insisted.
But the important question in this controversy is, whether the court will decree that the surviving executor of Baehael Newbold shall pay to the complainants the legacy left to Lydia Whitall, without allowing the executor to set off the indebtedness, which he alleges to be due from the husband of the legatee to the estate of the testatrix.
The defendant insists that the fund out of which the legacy is to be paid, is constituted, in part, of the debt which the husband of the legatee owes the estate; and as the object of this suit, and its legal effect, is to reduce the legacy into the absolute form and control of the husband, it is equitable that he should take in payment that part of the fund made up of his own debt.
The statement of the proposition shows that its proper solution depends upon the intention of the testatrix. If by her will the husband’s debt constitutes, in part, the fund to pay the legacy to the wife, and there are no circumstances inconsistent with the fact of such being the testatrix’s intention, this court ought not to aid the husband to reduce the legacy into his possession, without at the same time compelling him to take his own debt in part payment.
There is no technical difficulty in the way of the court’s making such a decree, if it is equitable to set off the debt against the legacy.
As a general rule, courts of equity conform to the principles of law in its application of the doctrine of set-off, and will not allow debts, accruing in different rights, to be set off against each other. But where an equity is created under particular circumstances, a court of equity will interpose where courts of law are not justified in doing it. Story’s Eq. Ju., § 1437, and note 2.
What is the equity of the case before us ? This must depend upon the nature of the debts due from the husband to *578 the estate, the attending circumstances of their contraction, and the. character of the bequest. If from these considerations we can come to a satisfactory conclusion as to the intention of the testatrix upon the matter in controversy, that intention ought to prevail.
In the case of Gallego v. Gallego’s Executors, 2 Brock. R. 286, in which Chief Justice Marshall gave the opinion of the court, the suit was on behalf of the wife of Henry Newman, by her next friend, to recover from the defendant a legacy which had been left to her by the will of a near relation, of whom she was an heir. The husband executed an instrument of writing, by which he transferred all his marital rights in the legacy to the wife, and gave her full authority to receive it. The defendants set up that the legatee’s husband was indebted to the testator, and that this debt' ought to be deducted from the legacy. The court decided that where the testator advanced money in his lifetime to a husband, whose wife was a relation, and would be, at his death, an heir and distributee of the testator, and directed that the husband should be debited with the amount, that it might be deducted, after the testator’s death, “from the share coming to the family,' and the testator afterwards made his will, bequeathing a legacy to the wife; non oonstat, that the testator designed that the advance made to the husband should be deducted from the legacy bequeathed to the wife, and the court decreed the whole legacy to be paid to the wife, without discounting the husband’s debt. The case itself, together with the form of ite prosecution, differs somewhat from the one we are now considering, but it is important as showing that the case was decided upon the intention of the testator, derived from the will — the nature of the debt due from the husband — and the cirir'distances attending the contracting the debt.
What was the intention of the testatrix in the case before us?
It was, most manifestly, her intention that her daughter Lydia should receive something from her estate. And yet she was aware that if the indebtedness of her daughter’s hus *579 band, as insisted upon now by the executor, should be appropriated to the payment of the legacy, his wife never could get one farthing, for that indebtedness amounts to a much larger sum than the one-fourth of the residue. If she intended that the residue of her estate should be divided as the executor insists, and as he, with his then co-executor, did divide it, why did she not say so ? There was no necessity, if such was the testatrix’s intention, of the particularity observed in the will as to what should constitute the residue of her estate, and as to the manner in which the three thousand dollars was to be carried into the accounts. Had her views corresponded with that of the executors, she would have concluded, as they did, that it was a useless expenditure of money and waste of time, to have her estate settled in the particular manner she directed. As her daughter Lydia, under these circumstances, could have no interest in it, she would at once have divided it between her three other daughters.
Let us examine the nature of the several debts sought to be deducted.
First, the executor insists upon deducting the sum of five hundred and thirty-nine dollars and thirty cents, with interest from the 25th of March, 1816 — a debt of more than eight years’ standing when the will was made. In the case of Gallego’s Executors, before referred to, Chief Justice Marshall remarks: “ If it was perfectly clear that the testator, at the time of making his will, or at the time of his death, intended this advance to the husband to be set off against the legacy of the wife, the court would feel great difficulty in disappointing such intention. But this is not perfectly clear; the debt is due from Kewman, the legacy is given to his wife. The debt, therefore, may still exist, and yet not be a set-off against the legacy. Had the money been advanced subsequent to the date of the will, there would have been more reason for considering it as satisfaction in part of the legacy, but even then it would not necessarily be so considered. But this advance being made anterior to the will, gives countenance to the opinion that the testator did *580 not intend it as a deduction from the legacy. The will being subsequent, and to a different person, furnishes probability to the opinion that if a provision for the debt had been in the mind of the testator, his will would have given some indication of his intention respecting it.” The will in that case was only three years subsequent to the time when the debt was contracted.
Here was a stale debt; upon the face of it, it was barred by the statute of limitations. The debtor was insolvent. The testatrix knew that, looking to the debtor’s personal responsibility, hér estate never would realize any part of the debt. She had the opportunity of securing it to her estate by her will, but did not see proper to do so. I do not think that the testatrix regarded that debt as any part of the fund out of which any of her legacies were to be paid.
With regard to the debt of two hundred and ten dollars, the circumstances connected with it are very different. When the testatrix made the advancement of three thousand dollars to her daughter, she took from her husband the following writing:
“ I promise to pay Mrs. Rachael Newbold, on or before the fifteenth day of August, two hundred and ten dollars, being one year’s interest on three thousand dollars, which Lydia N. Whitall has received from her mother, and which money is to be realized for and on account of Lydia N. Whitall.
“Sam’l Whitall.
“ Georgetown, August 31st, 1823.”
This writing is evidence that the testatrix intended that one year’s interest, at least, should be paid on the advancement made to her daughter. It is true that the testatrix knew at the time she took the writing, that Whitall was insolvent ; but still her taking it showed her intention that she meant he should account for the amount the writing called for. She confided in his future ability to pay it. She made no special reference 4o it in her will. When she made her will the debt was not due. Unlike the other, upon the face of it, it was a valid, subsisting debt due to her, and which she relied upon realizing for the benefit of her *581 estate. It constituted a part of her estate which was to make up the residue, a fourth part of which she bequeathed to her daughter. There is another circumstance connected with her estate which she did not foresee, and which makes it equitable that this debt should be considered as part of the residue of the estate which should be appropriated, in part, to the payment of this legacy. It is manifest that the testatrix intended her four daughters, of whom Lydia, the complainant, was one, should each have a like portion of her property. Had the estate been settled within a short time after her decease, by carrying this debt into her estate and deducting it from Lydia’s portion, this intention would have been carried out. But such was the nature of the property left in the hands of the executors, that the residue, which was to be divided between her four daughters, was not ascertained until twelve years afterwards. Of this delay no complaint is made in the bill, nor by any one interested in the estate, and it seems to have been necessary. The consequence is that Lydia has the benefit of the interest on the throe thousand dollars advanced to her, for twelve years, and has the advantage over her three sisters to the amount of three-fourths of that interest — upwards of fifteen hundred dollars — in the distribution of the estate. I cannot believe the testatrix ever contemplated such a result, and yet there is no principle of law which will authorize the court to charge Lydia with interest on the three thousand dollars. There seems, under these circumstances, a manifest equity, where the husband is seeking to reduce the legacy into his absolute possession, with the consent of the wife, and without her asking the interference of the court to protect the legacy for her benefit, to compel the husband to take, in part payment, his own debt, constituting, by the intention of the testatrix, in part, the fund out of which the legacy is to be paid. If the complainant, .Samuel Whitall, is not compelled in this suit to discharge the debt, it is entirely lost to the estate, and the husband, in right of his wife, will receive that much more in the distribution of the estate than the three daughters of the testatrix, who were each to receive an equal share with his wife.
*582 As to charging the complainants with interest on the three thousand dollars. Upon what principle can it be done? It cannot be done unless the testatrix has so directed by her will. It may appear to us proper and just that the complainants should be charged with the interest, and yet, if we knew the reasons and motives which operated upon the testatrix’s mind in the testamentary disposition of her property, we might readily appreciate the wisdom of the testatrix in not charging her daughter with interest on this advancement. What influence did the misfortunes and pecuniary embarrassments of the husband, and the necessities or wants of this daughter over her other children, exert over the mind of the testatrix in the distribution of her estate ? But we cannot speculate or decide this case upon our judgment of the justice or propriety of this particular devise. The only question with the court is what is the devise, and not what ought it to have been. We cannot make a will for the testatrix. What is written we must give effect to, according to law.
I do not see room for doubt about this matter. If the testatrix had said nothing of the three thousand' dollars in her will, it could not have been brought into the estate at all, unless it could be made to assume the shape of a debt due to the estate. That could not be. An advancement to a daughter could, under no circumstances, be converted into a debt due from the husband. It could not be a debt due from the daughter. She being a married woman, could not contract a debt. Had Rachael Newbold died intestate, her daughter Lydia’s portion of her mother’s estate would have been chargeable with the three thousand dollars as an advancement. In such case, it is admitted no interest could have been charged upon it. But the testatrix, by her will, has directed the three thousand dollars which she had advanced to her daughter, but not the interest, to be charged against her daughter. The court is now asked to do more than the testatrix directed, and to charge not only the three thousand dollars, but interest on it also. How shall" it be charged, upon what principle ? It was an advancement *583 to the wife. The testatrix so declares it. The husband is not liable for interest on it. The principal is not a debt due from the husband, and, of course, he cannot be called upon for the interest. If the husband is not, in law, liable for the interest, and the testatrix has not, by her will, directed it to be charged against her daughter, it is difficult to perceive by what authority or with what propriety this court can allow it as a charge against the complainants.
I am of opinion that the debt of two hundred and ten dollars should be carried into the accounts, and that, in distributing the residue as directed by the will of the testatrix, it should be deducted from the portion to which Lydia Whitall is entitled. In ascertaining the amount due to the complainants, the calculation is a simple one, and there is no necessity of the expense or delay of a reference.
The amount ascertained by the accounts is thirteen thousand three hundred and eight dollars and seventy-four cents. To this sum is to be added the three thousand dollars as directed by the will, and the further sum of two hundred and ten dollars, with interest from August 15th, 1824, up to August 15th, 1836, when the accounts were settled and the residue ascertained for distribution — which would be three hundred and sixty-one dollars and twenty cents. The amount of these several sums makes sixteen thousand six hundred and sixty-nine dollars and ninety-one cents, one-fourth of which the complainants are entitled to receive, with interest from August 15th, 1836, after deducting therefrom the three thousand dollars advancement, and the debt of three hundred and sixty-one dollars and twenty cents.
The principal sura will be found to be eight hundred and six dollars and twenty-seven cents, and the interest up to October 20th, 1852, seven hundred and eighty-two dollars and sixty-five cents, making due to the complainants, October 20th, 1852, the sum of one thousand five hundred and eighty-eight dollars and ninety-two cents.
The counsel can make the calculation, and point out any inaccuracy that may exist, which will be corrected.
*584 The opinion of the Court of Appeals was delivered by
Green, C. J. The first point relied upon for reversing the decree of the Chancellor in this case is, that the decree of the Orphans’ Court, confirming the accounts of the executors of Rachael Newbold, is final and conclusive, and cannot be set aside or opened in equity, except for fraud. The legal principle insisted on is that, in the absence of fraud, a palpable mistake appearing upon the face of an executor’s account, after final settlement and allowance, cannot be relieved against in equity, but can only be corrected by application to the Orphans’ Court for re-settlement. The objection is based upon the provisions of the twenty-seventh section of the act respecting the Orphans’ Court, {Rev. Stat. 214,) by which it is enacted that the sentence or decree of the Orphans’ Court, on the final settlement and allowance of the accounts of executors, shall be conclusive upon all parties, and shall exonerate and forever discharge every such executor from all demands of creditors, legatees, or others, beyond the amount of such settlement, except for assets or moneys which may come to hand after settlement as aforesaid — excepting also in cases where a party applying for a re-settlement shall prove some fraud or mistake therein, to the satisfaction of the said Orphans’ Court. The design of the action is clearly to declare the conclusiveness of the settlement of accounts by the Orphans’ Court, and to prescribe the particular cases in which alone that court may open the account and order a re-settlement. It was not designed to limit the powers or abridge the jurisdiction of the Court of Chancery. If this be otherwise, it clearly takes from the court of equity the power to interfere in cases of fraud, as well as in cases of mistake. Prior to this enactment, the court of equity had a clear right to correct mistakes in the accounts of executors after final settlement. A settlement and quietus in the Orphans’ Court were not conclusive as to the correctness of the accounts, but they were liable to be inquired into even at law.
Livingston v. Combs, Coxe 42, and in Turner’s case, 2 *585 Roll’s Ab. 678, it is said that at law, upon plene administravit pleaded, the account given to the Ordinary shall not be given in evidence, nor any regard had to it.
In Bejsell v. Axtell, 2 Vern. 47, an account of an intestate’s estate was decreed to be taken in equity, notwithstanding an account was previously taken, and a distribution decreed in the spiritual court.
The later authorities, however, regard the settlement of an account in the ecclesiastical court, upon notice to all parties in interest, as final. Penire v. Luscomar, 2 Jac. & W. 201; Toller on Ex’rs 492; 2 Williams on Ex’rs 1776. But the force of the objection consists in the fact that the statute creating Orphans’ Courts creates them courts of record, and declares that their decrees shall be final; thus placing their judgments, it is insisted, on the same ground with the judgment of any other court of record, and precluding a court of equity from correcting such judgments for any mistake. It is true, a court of equity does not formally correct mistakes in judgments at law, but it has the undoubted power, and it anciently formed a very extensive branch of equity jurisdiction, to relieve not only against fraud, but against surprise, injustice, or mistakes, suffered or committed in a court of law, by compelling the party to submit to a new trial, or by granting a perpetual injunction against his execution. Graham on New Trials 557; 6 Johns. Chan. R. 70.
A court of equity, moreover, had, at the time of the passage of the act in question, and still has, concurrent jurisdiction with the Orphans’ Court in the settlement of executors’ accounts. Salter v. Williamson, 2 Green’s C. R. 480. In correcting an obvious mistake upon the face of the account as settled, a court of equity does not attempt to review the judgment of the Orphans’ Court. The matter in question is not res adjudieata. It never was passed upon by the Orphans’ Court. It is believed, moreover, to be not only in accordance with the sentiment of the profession, but with the practice of the court of equity to correct, even incidentally, the mistakes of a settlement in the Orphans’ Court. Such *586 was obviously the opinion of Chancellor Vroom, in Gray v. Fox, Saxton’s R. 259. In Peacock v. The Ex’rs of Newbold, 3 Green’s Chan. 61, which was a bill for the recovery of a residuary legacy, the bill contained no allegation of any mistake in the settlement before the Orphans’ Court. But upon the production of the account the mistake was apparent, and' it was conceded as an unquestioned point, that the error could be corrected in law, and if the complainant was entitled to recover at all, she should recover the full amount of her share, without the necessity of resorting to the Orphans’ Court to have the mistake corrected in that tribunal. The practical importance of this question, and the earnestness with which it was pressed upon the attention of the court, rather than its influence upon the result of the present case, renders the expression of the views of the court in regard to it proper.
But does the decree of the Chancellor, in point of fa.ct, set aside or open the decree of the Orphans’ Court? The complainants’ bill does indeed charge that the sum of three thousand dollars, advanced to Lydia Whitall, was unlawfully and fraudulently omitted, both in the inventory and in the account. But it is apprehended that it was omitted from both with perfect propriety and to have inserted it in either, would have led to serious embarrassment. The inventory required to be exhibited by the executor is an inventory of the goods, chattels and credits of the deceased. An advancement is neither; it forms no part of the estate; it cannot be resorted to for the payment of debts. The child advanced cannot be compelled to refund for any purpose connected with the settlement of the estate. To require the executors to include the advancement in the inventory, would not only be in contravention of the statute, but would render them liable for moneys to which they had no title, and for which they were in no sense liable. So the executor is required to account, and does account for so much of the goods, chattels and credits of the deceased as came to his hands to be administered, and for his payments and disbursements out of the same. But an advancement *587 made in the lifetime of the testator, is no part of the estate to be administered by his executor. As has been already said, it can upon no contingency be recovered back from the person advanced, even for the purpose of equalizing legacies. The accounting executor and the surrogate, therefore, rightly held that the Sum of three thousand dollars advanced by Rachael Newbold, the testatrix, in her lifetime, to her daughter, constituted no proper part either of the inventory of the estate or of the final account of the executor. It constituted no part of the estate. It never came to the hands of the executors to be administered. They never could have been held liable for it, as they are for the balance of the estate, to legatees or next of kin. The will does, indeed, declare that the advancement shall be deemed a part of the residue of the estate for the purpose of distribution among the legatees, and that the three thousand dollars advanced shall be deducted from the share of the child advanced ; but the whole design and operation of the clause is to designate the mode in which the distribution shall be made, in order to insure perfect equality among the legatees. It does not change the nature of the advancement.
So in regard to the two notes claimed by the estate against the husband of Lydia Whitall — they were omitted, both in the inventory and in the account, with perfect propriety. The debtor was non-resident and insolvent. The notes never could have been recovered from him. They were desperate debts. If included in the inventory, the executor must, in his final account, either have prayed an allowance for them as desperate debts, which would have left the balance of the accounts precisely as it now is, besides adding additional embarrassment to the matter in controversy ; or he must have charged himself with the amount as a part of the balance in his hands, and thereby, in severe! possible contingencies, have rendered himself personally liable for money which he never received, and for which he was bound neither in law nor in equity to account. Under the peculiar circumstances of the case, the executor, in omit *588 ting, the claims against Samuel Whitall from the inventory and from the account, took a perfectly justifiable course, and the only one which,- in prudence, he could have taken. There was neither fraud inor mistake in the omission, and no inference unfavorable to the executor should be drawn from it.
There is, then, neither fraud nor mistake in the account of the executor as settled and allowed by the Orphans’ Court. It presents truly the balance of the estate of the testatrix which came to the hands of the executors to be administered. The sum in their hands to be distributed is thirteen thousand three hundred and eight dollars and seventy-four cents —the balance apparent upon the face of the account. The only question is, how that sum is to be distributed among the legatees in pursuance of the directions of the will. It was justly observed by the Chancellor, that “ it is not necessary to open the accounts or to interfere with any action of the Orphans’Court in order to ascertain the complainants’ rights, or to give them the relief they seek.” In point of fact, the decree of the Court of Chancery has in nowise altered or interfered with the account as settled and allowed by the Orphans’ Court.
The second point relied upon for reversal is that the account has been acquiesced in for so long a period before bill filed, that equity will not interfere.
As has been already said, the decree of the Chancellor in nowise disturbs the account as settled by the executor. That account, in connection with the directions of the will in regard to the advancement and the mode of distribution, exhibits a larger sum due to the complainant than is allowed by the Chancellor’s decree. The final account was settled in August, 1836, exhibiting on its face a balance due to the complainants. The bill in this cause was filed in December, 1846, something more than ten years afterwards. The legatee, during all that period, has been a married woman. Upon the death of her husband, the claim would survive to her. The statute of limitations could not be pleaded against her either at law or in equity. The only view in which the de *589 lay can avail the defence is either, first, upon the ground that the delay has been such as to raise a presumption of payment, (which is not pretended,) or second, that greater injustice will arise to the defendant from the complainant’s laches and delay in enforcing her claim, than would result to the complainant from a denial of her rights.
The case affords no ground whatever for arriving at such conclusion. I know of no case where the laches of the husband to enforce the claim of a married woman for a legacy bequeathed to her has been held available in equity to defeat the claim of the wife, except upon the ground of presumption of payment. In Peacock v. Newbold’s Executors, 3 Green’s Chan. R. 71, the bill was filed to recover a legacy to a married woman, thirty-one years after the death of the testator, twenty-four years after the settlement of the estate, and seventeen years after the death of the executor, and no cause shown for the delay. The bill was dismissed by the Chancellor, on the ground of the presumption of payment, arising fr'om the time which elapsed before suit brought. That decree was unanimously affirmed by this court, upon appeal. Neither the lapse of time, nor the attendant circumstances, create any analogy between the two cases.
The third and last point relied on for reversal, is that nothing is due to the complainants.
In stating the accounts between the parties, it is clear—
First. That no interest on the advancement of three thousand dollars should be charged against the legatee. An advancement, as such, never draws interest. There is nothing in the will that indicates an intention on the part of the testatrix that it should draw interest, but the reverse. The apparent inequality created by the length of time which the advancement is held and enjoyed before the other legatees receive their share, constitutes no ground for charging the advanced legatee with interest. It is an inequality which always exists where advancements are made at different times by a parent among a family of children.
Second. The bill due from Samuel Whitall to the testatrix, March 25th, 1816, for five hundred and thirty-nine dol *590 lars and thirty cents, should not be allowed by way of set-off. It had been due more than six years at the time of the advancement to the daughter. The husband was then insolvent. If the testatrix had intended that it should be paid, it would either have been settled at the time of the advancement, or have been specially directed by the will to be- deducted from the wife’s share.
There is no error in the decree prejudicial to the rights of the appellant.
It is insisted that there is error in the decree prejudicial to the respondents, in this, that it allows the executor to set off a debt due to the estate of the testatrix from the husband, against the wife’s claim for her legacy. It would, perhaps, be a sufficient answer to this exception that no appeal has been taken from this portion of the decree. But waiving this formal answer, and admitting the question to be fairly open for consideration, there is no error in this particular in the decree.
It cannot be maintained as a general proposition that in a bill by a husband and wife for the wife’s legacy, the executors will be permitted to set off debts due from an insolvent husband to the estate. The principles upon which equity acts in aiding the husband to recover the wife’s legacy, are inconsistent with the allowance of the set-off, to the prejudice of the equity of the wife. Following the principles of the civil law, equity, in suits to recover the wife’s property, regards the interests of the husband and wife as totally distinct, It does not treat the property of the wife, where the husband is seeking to reduce it into possession, as the property of the husband. It will not, as a general rule, aid the husband, except, upon his making suitable provision for his wife. The principle is laid down in the broadest terms, that equity will not interfere to put the husband in possession of the wife’s property, without his making suitable provision for her, unless $he voluntarily, on examination, waive any provision. And the practice has been adopted, in cases like the present, where the bill is filed in the name of the husband and wife, and no objection made on the part of the *591 wife to the husband’s recovering the legacy. Brown and wife v. Elton, 3 P. W. 202; Glen and, wife v. Fisher, 6 John. C. R. 33, 36 ; 2 Kent’s Com. 140.
So long as the court has the direction or control of the fund out of which the equity of the wife is to be secured, her claim cannot be defeated by any management of the husband. Clancey on Husband and Wife 509.
But in the present case the allowance was made to the executors as a matter of equity resulting from the provisions of the will. The Chancellor regarded the debts of the husband as a part of' the fund out of which the legacy to the wife was to be paid, and on that ground it was deemed, under the circumstances of the case, inequitable that the husband should reduce the legacy into possession without allowing, by way of set-off, this debt due from him to the estate. As no claim was set up on behalf of the wife, in the court below, of any equity in the legacy, this court could not on that ground reverse the decree.
I am of opinion that the decree of the Chancellor should be in all things affirmed, with costs.
Decree accordingly.
The decree of the Chancellor was affirmed by the following vote:
For affirmance—Green, C. J., Justices Ogden, Elmer, Potts, and Haines, and Judges Huyler, Valentine Cornelison, and Risley—9.
For reversal—Judge Wills.